UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MT. HAWLEY INSURANCE COMPANY,

   Plaintiff,

vs.

ARTHUR R. ROEBUCK III & PATRICIA R.
SWINDLE TRS d/b/a JUPITER WEST
PLAZA; RIVIERA TRADING AND
MARKETING d/b/a JUPITER WEST
PLAZA; SCRIBE ENTERPRISES, INC. d/b/a
JUPITER WEST PLAZA; and LESLIE J.
FRYE, II,

   Defendants.

CASE NO. 9:17-cv-80213-KAM

_____/

**MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE COMPLAINT
FOR DECLARATORY RELIEF [D.E. 1], MEMORANDUM OF LAW
IN SUPPORT, AND STATEMENT OF MATERIAL FACTS**

Defendants ARTHUR R. ROEBUCK, III & PATRICIA R. SWINDLE TRS d/b/a JUPITER WEST PLAZA, RIVIERA TRADING AND MARKETING d/b/a JUPITER WEST PLAZA ("Riviera"), and SCRIBE ENTERPRISES, INC. a/b/a JUPITER WEST PLAZA ("Scribe") (collectively the "Insureds"), pursuant to Federal Rule of Civil Procedure 56 hereby move for partial summary judgment in their favor and against MT. HAWLEY INSURANCE COMPANY ("Mt. Hawley") regarding the existence of the duty to defend the Underlying Complaint (hereafter defined). In support of this Motion, the Insureds set forth the following statement of material facts and memorandum of law pursuant to S.D. Fla. L.R. 7.1(a)(1) and 56.1(a):

1

## I.  STATEMENT OF MATERIAL FACTS

### A.  Procedural History

1. Mt. Hawley sued the Insureds on February 21, 2017 by way of a single-count complaint for declaratory relief.  (D.E. 1).  Service was made upon the Insureds on May 16, 2017, and on June 16, 2017, the Insureds answered and asserted a counterclaim. (D.E. 37).  Mt. Hawley responded to the Insured's counterclaim on July 19, 2017, thus closing the pleadings. (D.E. 44).

### B.  The Mt. Hawley Policy

2. Mt. Hawley issued a commercial general liability insurance policy to Susi Holdings, Inc. as named insured for the period from May 25, 2014 to May 25, 2015; Policy No. MGL017764 (the "Mt. Hawley Policy").  (D.E. 1-1 at Page 6 of 63).

3. The Mt. Hawley Policy also names Riviera, Scribe and their joint venture partners as insureds, and lists 6661-6791 W. Indiantown Rd., Jupiter, Florida as an insured location. (D.E. 1-1 at Page 9 of 63).

4. The Insuring Agreement of the Mt. Hawley Policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.

(D.E. 1-1 at Page 10 of 63).

5. The Mt. Hawley Policy defines the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (D.E. 1-1 at Page 23 of 63).

2

6. The Mt. Hawley Policy defines the term "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (D.E. 1-1 at Page 25 of 63).

7. The Mt. Hawley Policy includes an endorsement titled "Tenants and Contractors – Conditions of Coverage," (the "Tenants and Contractors Exclusion") which is triggered where there is:

> [A]ny "bodily injury," "property damage," and/or "personal and advertising injury" arising directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant by any insured, such tenant's operations of any kind, or work by a "contractor[.]"

(D.E. 1-1 at Page 46 of 63).

### C. The Underlying Complaint and Mt. Hawley's Claims

#### 1. *The Underlying Complaint*

8. The Insureds were sued in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida by way of an Amended Complaint dated December 17, 2015 in Case No. 2015CA010556 (the "Underlying Complaint"). (D.E. 1-2 at Page 2 of 18).

9. The Underlying Complaint seeks recovery against the Insureds for personal injuries allegedly suffered by Leslie J. Frye, II ("Frye"). (D.E. 1-2 at Page 2 of 18, *et seq.*).

10. The Underlying Complaint alleges that "On or about December 14, 2014, [Frye] was a business invitee lawfully on the premises when he was attacked, assaulted and battered resulting in significant personal injury." (D.E. 1-2 at Page 3 of 18, ¶9).

11. The term "premises" is defined as the "Jupiter West Plaza" "located at 6671 W. Indiantown Road, Jupiter, Florida 33458." (D.E. 1-2 at Page 3 of 18, ¶5).

3

12. There are no allegations in the Underlying Complaint that Frye was injured at or in any particular tenant's location at the Jupiter West Plaza. (D.E. 1-2).

13. In fact, the Underlying Complaint includes allegations that the incident involving Frye occurred in the parking lot of a shopping center located at 6671 W. Indiantown Road in Jupiter, Florida. (*See, e.g.*, D.E. 1-2, ¶¶ 20k, 20l, 26k, 26l, 35k, 35l, 41k, and 41l) (alleging generally that the Insureds breached their duty of care for failure to protect the parking lot).

14. Each of the Insureds is alleged to have owed Frye a duty of care because each (evidently individually and/or collectively) "leased, operated possessed, controlled, and/or maintained the premises[1] including the parking lot." (*See, e.g.*, D.E. 1-2, ¶¶ 22, 37); (D.E. 1-2 at Page 3 of 18, ¶¶ 5, 6 and 7) (alleging that the Insureds "owned, operated, maintained and controlled the premises known as JUPITER WEST PLAZA," which is "located at 6671 W. Indiantown Road, Jupiter, FL 33458").

   2. *The Mt. Hawley Complaint*

15. Mt. Hawley's Complaint in the lawsuit *sub judice* sets forth a single count for declaratory relief (the "Mt. Hawley Complaint"). (D.E. 1).

16. The Mt. Hawley Complaint is predicated solely on the assertion that the Insureds failed to comply with the Tenants and Contractors Exclusion. (D.E. 1 at Page 9 of 10, ¶ 32).

17. No fact giving rise to the applicability of the Tenants and Contractors Exclusion is alleged in the Underlying Complaint. (*See* D.E. 1 at Page 6-7 of 10, ¶¶ 22 – 26 *and compare* D.E. 1-2).

---

[1] The Underlying Complaint uses the terms "premises" (which is defined as the entire shopping center, and is specifically alleged to include the parking lot of the center) and "property" (which is undefined) interchangeably, and claims that all of the named defendants owned and controlled these areas. (*See, e.g.*, D.E 1-2 at Pages 4, 6, 9, 12, and 15 of 18 ¶¶ 10, 16, 22, 28 and 37).

4

18. The Mt. Hawley Complaint asks this Court to determine that Mt. Hawley has "no duty to defend or indemnify" the Insureds. (D.E. 1 at Page 10 of 10).

**D.  Discovery**

19. Discovery taken in this lawsuit has identified the following facts concerning the incident involving Frye:

   a. Scribe and Riviera are the owners of a shopping center located at 6661-6791 West Indiantown Road in Jupiter, Florida ("Jupiter West Plaza"). (Blatt Dep.[2] at page 8, lines 18-19).

   b. A bar called "Uncle Mick's" is located in the Jupiter West Plaza. (Martinson[3] Dep. at p. 9, line-13-19).

   c. Uncle Mick's is a defendant named in the Underlying Complaint. (D.E. 1-2).

   d. Frye's injuries occurred during an altercation with Paul Cleary ("Cleary") in the parking lot of Jupiter West Plaza. (McNail Dep.[4] Page 32, Line 10, – Page 33, Line 7; Page 50, Line 13 – Page 51, Line 15 Page 75, Lines 11-17; Exhibit 10/D.E. 68, Police Report; D.E. 69).

   e. There was no dispute between Frye and Cleary in Uncle Mick's before the stabbing. (Martinson Dep. at page 32, lines 20-22; Exhibit 8/D.E. 67, Response 9.)

   f. None of the employees of Uncle Mick's witnessed (and, thus, none were involved) in the dispute between Frye and Cleary. (Martinson Dep. at Page 35, Lines 5-7).

   g. Frye and Cleary's dispute occurred when Frye intervened in a dispute between Cleary and his girlfriend. (McNail Dep. Page 32, Line 10, – Page 33, Line 7; Page 50, Line 13 – Page 51, Line 15 Page 75, Lines 11-17; Exhibit 10/D.E. 68, Police Report; D.E. 69).

   h. Cleary was unknown to Uncle Mick's before the stabbing. (Martinson Dep. at Page 33, Lines 9-15).

---

[2] Citations to deposition transcripts are referred to herein by the last name of the deponent and the page and line and/or exhibit containing the relevant testimony. In this case, "Blatt Dep." refers to the Transcript of the Deposition of Robert Blatt taken on June 8, 2018, which has been filed with the Court (D.E. 64).
[3] Transcript of the Deposition of Kent Martinson taken August 21, 2018 (D.E. 66).
[4] Transcript of the Deposition of Teresa McNail taken May 30, 2018 (D.E. 65).

20. Discovery taken in this lawsuit has identified the following facts concerning ownership and control of the Jupiter West Plaza:

   a. Scribe and Riviera (as part of a joint venture) own Jupiter West Plaza, including the parking lot. (Blatt Dep. at Page 8, Lines 18-19).

   b. The Jupiter West Plaza is a shopping center with multiple tenants and Uncle Mick's leases two of the suites at the shopping center. (D.E. 37-1 at Page 22; Blatt Dep. at Exhibit 10/D.E. 37-1, Page 22; Martinson Dep. at Page 9, Lines 13-19).

   c. All of the tenants at Jupiter West Plaza have use of the parking lot. (Blatt Dep. at Page 41, Lines 9-24).

   d. Scribe and Riviera control the parking lot at Jupiter West Plaza. (*See generally* Blatt Dep. at Page 55).

   e. Scribe and Riviera are responsible for maintaining the parking lot at Jupiter West. (Blatt Dep. at Page 55, Lines 20-25).

   f. Scribe and Riviera are responsible for providing lighting and security, if any, in the parking lot at Jupiter West. (Blatt Dep. at Page 55, Lines 3-19).

   g. Uncle Mick's has no right to control the parking lot at Jupiter West Plaza. (Blatt Dep. at Page 54, Line 14 – Page 55, Lines 1-5; Martinson Dep. at Page 31, Line 10-16).

   h. Uncle Mick's has no responsibility to maintain the parking lot at Jupiter West plaza. (Martinson Dep. at Page 31, Line 14 – Page 32, Line 1).

   i. Uncle Mick's has no responsibility to provide lighting or security in the parking lot at Jupiter West plaza. (Martinson Dep. at Page 32, Line 2-9).

## II. MEMORANDUM OF LAW AND ARGUMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden therefore rests with a nonmoving party to come forward with evidence demonstrating a genuine issue of

material fact for trial where the movant negates an essential element of the nonmoving party's claim or demonstrates that the nonmoving party's evidence is insufficient to establish an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (finding that Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no genuine issue of material fact"). A fact is material only if it might affect the outcome of the lawsuit under controlling law. *Id.* An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that a nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts" to avoid summary judgment).

In *Celotex*, the Supreme Court held that a party moving for summary judgment is not required to expressly negate the opponent's claims. *Id.* at 323. Rather, the Court explained, summary judgment is appropriate if, after a reasonable period for discovery, the non-movant has failed to make a showing sufficient to establish an element of its claims:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. **In such situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.**

*Id.* at 322-323 (emphasis added).

**B.     Determination of the Duty to Defend**

Under Florida law,[5] the duty to defend "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005); *Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F.2d 810 (11th Cir. 1985); *see also Grissom v. Commercial Union Ins., Co.,* 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992) (finding that an insurer must defend its insured even if the allegations in the underlying complaint "at least marginally and by reasonable implication" can be construed to invoke a duty to defend). Thus, the insurer must defend a lawsuit even if the allegations in the complaint are factually incorrect or meritless. *Jones*, 908 So. 2d at 443; *see also State Farm Fire and Cas. Co. v. Steinberg,* 393 F.3d 1226, 1230 (11th Cir. 2004). In considering those allegations, the Court is guided by a standard that is highly deferential to the insured: "Any doubts regarding the duty to defend must be resolved in favor of the insured." *Jones*, 908 So. 2d at 443.

Where a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer must defend the entire lawsuit. *Grissom*, 610 So. 2d at 1307; *Sunshine Birds and Supplies, Inc. v. U.S. Fidelity and Guar. Co.,* 696 So. 2d 907, 909-910 (Fla. 3d DCA 1997); *see also Clarendon Nat'l Insurance Co. v. Vickers*, 265 F. App'x 890, 891 (11th Cir. 2008) (noting that if an underlying complaint "contains <u>at least one allegation</u> with respect to which there would be coverage, then the insurance company must defend the entire suit") (emphasis added). Moreover, an insurer may not deny a defense to its insured based on a policy exclusion unless the insurer establishes that the underlying complaint's allegations

---

[5] This lawsuit is pending before the Court under diversity jurisdiction and, in such a case, Florida law governs the insurance coverage issues it presents. *See, e.g.*, *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1291 (11th Cir. 2006).

fall "solely and entirely" within the relied upon exclusion. *See, e.g.*, *Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen. Ins. Co.,* 980 F.2d 1402, 1405-07 (11th Cir. 1993); *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007) ("[W]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation.").

Only under the most limited of circumstances may a court consider facts beyond the four-corners of a complaint in determining whether the duty to defend exists:

> In exceptionally rare cases, however, where the complaint omits reference to an uncontroverted fact that, if pled, would have clearly placed the claim outside the scope of coverage, equity may relieve the insurer from its duty to defend.

*Sinni v. Scottsdale Ins. Co.*, 676 F.Supp.2d 1319, 1323 (M.D. Fla. 2009); *Stephens v. Mid-Continent Cas. Co.*. 749 F.3d 1318, 1323 (11th Cir. 2014) (recognizing that consideration of extrinsic facts is appropriate in only "exceptional cases" when it uncontroverted facts place a claim outside of coverage).

### C. The Court Should Grant Summary Judgment in Favor of the Insureds Finding that Mt. Hawley has the Duty to Defend

#### 1. *The Underlying Complaint Triggers the Duty to Defend*

Mt. Hawley has not established the essential elements of its claim – *i.e.*, that the allegations in the Underlying Complaint fall exclusively within the Tenants and Contractors Exclusion – and the Insureds are therefore entitled to judgment as a matter of law finding that Mt. Hawley has the duty to defend them. *See generally Celotex Corp.*, 477 U.S. 317, 330 (addressing the standard for summary judgment); *see also Lime Tree Village Community Club Ass'n, Inc.,* 980 F.2d 1402, 1405-07 (recognizing the rule that an insurer must show that the

9

allegations in a complaint are solely and entirely within a policy exclusion when relying on an exclusion to avoid its obligation to defend).

The Underlying Complaint alleges that Frye "was attacked, assaulted and battered" at the Jupiter West Plaza on December 14, 2014 and, as a consequence, suffered 'significant personal injury." (D.E. 1-2 at Page 3 of 18, ¶ 9). The Underlying Complaint, therefore, alleges "bodily injury" (bodily injury, sickness or disease), during the policy period, at an insured location. (D.E. 1-1 at Pages 6, 9, 10 and 23 of 63). Further, the Underlying Complaint commenced a lawsuit seeking recovery against the each of the Insureds for "damages in excess of Fifteen Thousand Dollars ($15,000) and for costs" as a consequence of their alleged negligence in providing security at the Jupiter West Plaza. (D.E. 1-2 at Pages 9, 12, 15 and 18 of 18). The referenced allegations are thus made in a "suit" against the Insureds for damages, within the coverage of the Mt. Hawley Policy; this conclusion cannot reasonably be disputed. (D.E. 1-2 at Pages 10 and 25 of 63).

The sole basis upon which Mt. Hawley seeks to disclaim the duty to defend are the Insureds' purported failure to comply with the Tenants and Contractors Exclusion. (D.E. 1 at Page 9-10 of 10). This exclusion is, however, inapplicable. First, the Underlying Complaint makes *no allegations* concerning the Insureds' *compliance* with the Tenants and Contractors Exclusion (*i.e.*, the contents of the Insureds' leases, etc.) (*See* D.E. 1-2 *and compare* D.E. 1-1 at Page 46 of 63).

Second, the trigger for application of this exclusion is that the claimed "bodily injury" arise "directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant by any insured." (D.E. 1-1 at Page 46 of 63). Here again, the Underlying Complaint makes *no allegation* that establishes the factual requirements for

application of the Tenants and Contractors exclusion – *viz.*, that Frye's injuries (a) arise directly or indirectly out of the use of the insured premises to (b) a commercial tenant.  At best, the Underlying Complaint makes only generalized allegations of negligence against all of the Insureds and Uncle Mick's for their individual and collective ownership, operation, maintenance, and control of the Jupiter West Plaza, as a whole.  (D.E. 1-2 at Page 3 of 18, ¶¶ 5 – 7).  The Tenants and Contractors Exclusion cannot therefore be raised as a bar to Mt. Hawley's duty to defend.  *See Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d at 443 ("Any doubts regarding the duty to defend must be resolved in favor of the insured."); *see also Lime Tree Village Community Club Ass'n, Inc.*, 980 F.2d 1402, 1405-07; *Castillo*, 971 So. 2d 820, 824 (recognizing that an insurer "has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion").  Where the Underlying Complaint alleges *no facts* that would trigger application of the Tenants and Contractors Exclusion, the Insureds submit that the Court's inquiry should end and that judgment should be entered in their favor and against Mt. Hawley finding that Mt. Hawley has a continuing duty to defend them.

        2.    *The Court Should Not Consider Extrinsic Evidence*

The duty to defend extends to lawsuits even where the allegations in a complaint are factually incorrect or meritless.  *Jones*, 908 So. 2d at 443; *State Farm Fire and Cas. Co.*, 393 F.3d at 1230.  A court may resort to extrinsic facts in determining the duty to defend *only where* such facts are uncontroverted and place the claims outside the scope of coverage.  *Sinni*, 676 F.Supp.2d at 1323; *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 Fed.Appx. 777, 786 (11th Cir. 2008) (recognizing that a resort to should only resort to extrinsic facts in determining the duty to defend when it is "manifestly obvious to all involved that the actual facts place the claims outside the scope of coverage"); *Mt. Hawley Ins. Co. v. Tactic Security Enforcement,*

11

*Inc.*, 2017 WL 8316925 (M.D. Fla. 2017) *approved Mt. Hawley Ins. Co. v. Tactic Security Enforcement, Inc.*, 2017 WL 6947453 (M.D. Fla. 2017) (rejecting the insurance company's argument that extrinsic facts should be considered in determining the duty to defend where there was conflicting evidence as to the facts triggering application of an exclusion in a liability insurance policy).

Here the facts show that Frye was the victim of a criminal attack. (McNail Dep. Page 32, Line 10, – Page 33, Line 7; Page 50, Line 13 – Page 51, Line 15l Page 75, Lines 11-17; Exhibit 10/D.E. 68, Police Report; D.E. 69). This attack did not occur in Uncle Mick's, did not start in Uncle Mick's, and did not involve any employees of Uncle Mick's. (Martinson Dep. at Page 32, Lines 20-22, Page 35, Lines 5-7; Exhibit 8/D.E 67, Response 9; McNail Dep. Page 32, Line 10, – Page 33, Line 7; Page 50, Line 13 – Page 51, Line 15l Page 75, Lines 11-17, Exhibit 10/D.E. 68; D.E.69, Certified Copy of Police Report). Indeed, the owner of Uncle Mick's has testified that Cleary was unknown to the bar prior to the incident. (Martinson Dep. at Page 33, Lines 9-15). Moreover, the incident in which Frye was injured occurred at a location that Uncle Mick's did not own, or control, and with respect to which Uncle Mick's did not have obligation to maintain, light, or provide security. (Blatt Dep. at Page 54, Line 14 – Page 55 Lines 1-25; Martinson Dep. at Page 31, Line 10 – Page 32, Line 9). This, then, is not a case in which "uncontroverted facts" demonstrate that an exclusion in the Mt. Hawley Policy abrogates its duty to defend the Insureds. To the contrary, the facts show that the exclusion was never triggered because the operations of Uncle Mick's and the attack on Frye are little more than coincidence – Frye simply intervened in a criminal attack he witnessed in the parking lot of Jupiter West Plaza. (*Id.*); *C.f. Taurus Holdings, Inc. v. United States Fidelity and Guaranty Co.*, 913 So. 2d 528, 539 (Fla. 2005), *citing Hagen v. Aetna Casualty and Surety Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996) ("The

term 'arising out of'…means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or having a connection with.'").

The decision of *First Specialty Ins. Corp. v. 633 Partners, Ltd.* is of particular use in resolving the issues raised in this case. The *First Specialty Ins. Corp* case involved a lawsuit brought against the insured, 633 Partners, Ltd., arising out of the forcible detention and sexual assault of an individual while at the insured's property. *First Specialty Ins. Corp.*, 300 Fed.Appx. at 779. The complaint against the insured alleged distinct counts for "false imprisonment" (which was covered) and "assault and battery" (which triggered an exclusion from coverage applying to claims "caused by or ar[rising] directly or indirectly out of an assault or assault and battery of any nature whatsoever") *Id.* at 783. The District Court applied the coverage exclusion and granted summary judgment in favor of the insurer, First Specialty Ins. Corp., on the duty to defend. The District Court's grant of summary judgment was predicated on facts extrinsic to the complaint, which showed that the sexual assault arose out of and was intertwined with false imprisonment. *Id.* at 786, 787. In reversing summary judgment, the Eleventh Circuit Court of Appeals observed that:

> To the extent that Florida law permits a[n] equitable departure from the general treatment of the duty to defend, it would not apply in this case. The court in *Keen* indicated that this relief would only be proper "if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest[ing] the existence of evidence establishing coverage." Here, Appellants explicitly contest the district court's finding that the false imprisonment and the assault and battery are so inherently intertwined as make the former arise out of the latter. In addition, [the injured party] pled sufficient evidence to support a finding of coverage based on a separate and distinct incident of false imprisonment, and…she did not omit any crucial facts that would have taken her claims outside the scope of coverage.

13

*First Specialty Ins. Corp.*, 300 Fed.Appx. at 787 (internal citations omitted). The same rule applies here. The Underlying Complaint omits no "crucial" and "uncontroverted" fact that would place Frye's claims beyond coverage. Rather, the factual record establishes that the Tenants and Contractors Exclusion is not triggered because Frye's injury was unrelated to Uncle Mick's operations; at a minimum these Insureds *dispute* the facts giving rise to its application. Under such circumstances, extrinsic evidence may not be considered in determining the duty to defend. *See Sinni*, 676 F.Supp.2d 1319; *First Specialty Ins. Corp.,* 300 Fed.Appx. 777; *Mt. Hawley Ins. Co.*, 2017 WL 8316925; *accord Mid-Continent Cas. Co. v. Gozzo Dev., Inc.*, 2017 WL 3578846, *3 (S.D. Fla. 2017) (refusing to consider evidence beyond the complaint in determining the duty to defend where the proffered evidence was "not the type of obvious and objective fact that clearly precludes coverage").

### III.   CONCLUSION

The allegations in the Underlying Complaint allege claims against the Insureds that are covered by the Mt. Hawley Policy and, therefore, trigger the duty to defend. Where there is no uncontroverted extrinsic evidence that triggers application of an exclusion in the Mt. Hawley Policy, the consideration of extrinsic evidence is improper under established law. The Court should therefore grant summary judgment in favor of the Insureds and against Mt. Hawley and order that Mt. Hawley has a continuing duty to defend the claims against the Insured set forth in the Underlying Complaint.

WHEREFORE Defendants ARTHUR R. ROEBUCK, III & PATRICIA R. SWINDLE TRS d/b/a JUPITER WEST PLAZA, RIVIERA TRADING AND MARKETING d/b/a JUPITER WEST PLAZA, and SCRIBE ENTERPRISES, INC. a/b/a JUPITER WEST PLAZA respectfully request that the Court enter partial summary judgment in their favor and against MT.

HAWLEY INSURANCE COMPANY, concluding that MT. HAWLEY INSURANCE COMPANY has a continuing duty to defend them in that certain case pending in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, under Case No. 2015CA010556, awarding their attorneys' fees and costs in defending this action pursuant to §672.428, Fla. Stat., and granting such further relief as is deemed just and proper.

Dated this 9th day of October, 2018.

Respectfully submitted,

**WARGO & FRENCH, LLP**
201 S. Biscayne Boulevard
Suite 1000
Miami, Florida 33301
Telephone:  (305) 777-6000
Facsimile:   (305) 777-6001

By: */s/ Michael C. Foster*
    Michael C. Foster, Esq.
    Florida Bar No.: 0042765
    mfoster@wargofrench.com
    Angelo M. Castaldi, Esq.
    Florida Bar No.: 119098
    acastaldi@wargofrench.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 9, 2018, I electronically filed the foregoing with the Clerk of Court, using CM/ECF. I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic filing generated by CM/ECF.

*/s/ Michael C. Foster*
Michael C. Foster

## **SERVICE LIST**

**9:17-cv-80213-KAM Notice has been electronically mailed to:**

Jack Thomas Frost     jfrost@kelleykronenberg.com, sdesouza@kelleykronenberg.com

Michael C. Foster     mfoster@wargofrench.com, cpatterson@wargofrench.com, Flservice1@wargofrench.com, lcruz@wargofrench.com