UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

MT. HAWLEY INSURANCE COMPANY,
    Plaintiff,

vs.                                    CASE NO. 9:17-cv-80213-KAM

ARTHUR R. ROEBUCK III & PATRICIA R.
SWINDLE TRS d/b/a JUPITER WEST
PLAZA; RIVIERA TRADING AND
MARKETING d/b/a JUPITER WEST
PLAZA; SCRIBE ENTERPRISES, INC. d/b/a
JUPITER WEST PLAZA; and LESLIE J.
FRYE, II,
    Defendants.
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 7.1(a)(1) and 56.1(a), Defendants ARTHUR R. ROEBUCK, III & PATRICIA R. SWINDLE TRS d/b/a JUPITER WEST PLAZA, RIVIERA TRADING AND MARKETING d/b/a JUPITER WEST PLAZA ("Riviera"), and SCRIBE ENTERPRISES, INC. a/b/a JUPITER WEST PLAZA ("Scribe") (collectively the "Insureds") respond in opposition to Plaintiff Mt. Hawley Insurance Company's ("Mt. Hawley") Dispositive Motion for Summary Judgment and Memorandum of Law in Support (D.E. 71) ("Mt. Hawley's Motion for Summary Judgment"). In support of this response (the "Response"), the Insureds state as follows:

**INTRODUCTION**

Scribe and Riviera are the owners and ground lessors of a shopping plaza located at 6661-6791 W. Indiantown Road, Jupiter, Florida (the "Jupiter West Plaza"). In December of 2014, a domestic assault occurred in the parking lot of Jupiter West Plaza – a man attacked his girlfriend and at least two women attempted to fend him off. Leslie Frye, II ("Frye") was alerted

1

to the assault when he heard screams while walking to his vehicle in the parking lot.  Frye called upon the assailant to stop, and the assailant then assaulted Frye.

The Insureds and Mt. Hawley have both moved for summary judgment, framing the following issue:  Are the duties to defend and indemnify contained in the commercial general liability policy (the "Mt. Hawley Policy") (D.E. 1-1 at Page 6 of 63) issued by Mt. Hawley to the Insureds triggered by a lawsuit filed by Frye for the injuries he sustained in the Insureds' parking lot?[1]  In answering this question "yes," the Insureds' Motion for Partial Summary Judgment on the Complaint for Declaratory Relief, Memorandum of Law in Support, and Statement of Material Facts (D.E. 70) (the "Insureds' Motion for Summary Judgment") and this Response explain – in accordance with established law – that the Underlying Complaint triggers the duty to defend in the Mt. Hawley Policy and nothing in the Underlying Complaint triggers an exclusion from coverage.  To be clear: the Mt. Hawley Policy obligates Mt. Hawley to pay those sums that the Insureds become legally obligated to pay as damages because of "bodily injury"[2] (i.e., Frye's injuries) and to defend the Insureds against any "suit"[3] seeking those damages (*i.e.*, the Underlying Complaint).

Mt. Hawley relies upon a "Tenants and Contractors – Conditions of Coverage" exclusion (the "Tenants and Contractors Exclusion") in opposition, which is triggered where there is:

> [A]ny "bodily injury," "property damage," and/or "personal and advertising injury" arising directly or indirectly from a commercial

---

[1] As noted in the Insureds' Motion for Summary Judgment (hereafter defined), the Insureds were sued in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida by way of an Amended Complaint dated December 17, 2015 in Case No. 2015CA010556 (the "Underlying Complaint"). (D.E. 1-2 at Page 2 of 18).

[2] The Mt. Hawley Policy defines the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (D.E. 1-1 at Page 23 of 63).

[3] The Mt. Hawley Policy defines the term "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (D.E. 1-1 at Page 25 of 63).

> tenant's occupation, use or maintenance of any premises leased to such tenant by any insured, such tenant's operations of any kind, or work by a "contractor[.]"

(D.E. 1-1 at Page 46 of 63). Mt. Hawley asserts that Frye's injuries – which occurred on property owned and controlled by the Insureds and as a proximate result of an act of domestic violence – actually arose out of the operations of a tenant of the Jupiter West Plaza known as Uncle Mick's ("Uncle Mick's") because Frye had visited Uncle Mick's on the night he was injured. Not so.

First, nothing in the "eight corners" of the Underlying Complaint and the Mt. Hawley Policy (which documents determine the duty to defend under long-established Florida law) demonstrate that the allegations in the Underlying Complaint fall exclusively within the Tenants and Contractors Exclusion as is required for the exclusion; the Insureds are therefore entitled to judgment as a matter of law finding that Mt. Hawley has the duty to defend them from all claims in the Underlying Complaint. Second, even if the Court were to look at extrinsic facts (that is, facts beyond the allegations in the Underlying Complaint) – an impermissible exercise at this state of the proceedings – no reasonable interpretation of the Tenants and Contractors Exclusion can apply the exclusion to facts showing that Frye's injuries resulted from a criminal attack, by and on an individual unknown to Frye, and unrelated to the operations of Uncle Micks. Mt. Hawley's Motion for Summary Judgment should be denied.

### INCORPORATION OF THE INSUREDS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED STATEMENT OF MATERIAL FACTS

The existence of the duty to defend is addressed in both this Response and in the Insureds' Motion for Summary Judgment. The Insureds therefore adopt and incorporate by reference their Motion for Summary Judgment and statement of material facts, into this

Response.  Unless otherwise defined herein, all defined terms in the Insureds' Motion have the same meaning in this Response.

**ARGUMENT**

**I. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE INSUREDS FINDING THAT MT. HAWLEY'S DUTY TO DEFEND IS TRIGGERED BY THE UNDERLYING COMPLAINT**

The Insureds' Motion for Summary Judgment is premised on the settled proposition that Mt. Hawley's duty to defend is determined solely by comparing the allegations in the Underlying Complaint to the terms of the Mt. Hawley Policy.  *See Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005); *Trizec Properties, Inc. v. Biltmore Construction Co.*, 767 F.2d 810, 811-12 (11th Cir. 1985) ("We begin by stating the general principles of Florida law which govern an insurer's duty to defend.  The duty to defend depends <u>solely on the allegations in the complaint filed against the insured</u>." (emphasis added) (internal quotation marks omitted)). Under this standard, Mt. Hawley "must defend the suit" if the Underlying Complaint "alleges facts that <u>create potential coverage</u>" under the Mt. Hawley Policy.  *Grissom v. Commercial Union Ins., Co.*, 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992); *Baron Oil Co. v. Nationwide Mutual Fire Insurance Co.*, 470 So. 2d 810, 813 (Fla. 1st DCA 1985) (ruling that if allegations of complaint leave any doubt regarding duty to defend, insurer is required to defend).

Thus, the singular – and dispositive – question is whether the Underlying Complaint alleges facts that fairly and potentially bring the Underlying Complaint within the coverage of the Mt. Hawley Policy. As demonstrated in the Insureds' Motion for Summary Judgment, the answer to this question is a definitive "yes."  The Underlying Complaint alleges that Frye "was attacked, assaulted and battered" at the Jupiter West Plaza on December 14, 2014 and, as a consequence, suffered "significant personal injury." (D.E. 1-2 at Page 3 of 18, ¶ 9).  This attack

4

thus is alleged to have caused a "bodily injury" during the policy period of the Mt. Hawley Policy, at an insured location. (D.E. 1-1 at Pages 6, 9, 10 and 23 of 63). Further, the Underlying Complaint is a lawsuit seeking recovery against each of the Insureds for "damages in excess of Fifteen Thousand Dollars ($15,000) and for costs" as a consequence of their alleged negligence in providing security at the parking lot of Jupiter West Plaza. (D.E. 1-2 at Pages 9, 12, 15 and 18 of 18). The claims against the Insureds are thus made in a "suit" against the Insureds for damages, within the coverage of the Mt. Hawley Policy; this conclusion cannot reasonably be disputed. (D.E. 1-2 at Pages 10 and 25 of 63). Therefore, applying the basic, "general principles" of Florida insurance law, as crystallized by *Jones*, *Trizec Properties*, *Grissom*, and others, Mt. Hawley has a duty to defend the Insureds in respect of the Underlying Complaint, which unequivocally alleges facts that create potential coverage under the Mt. Hawley Policy.

Moreover, there are *no allegations* in the Underlying Complaint that show the claims against the Insured's fall "solely and entirely" within an exclusion of the Mt. Hawley Policy. *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 761 F. Supp. 2d 1337, 1343 (M.D. Fla. 2010) ("When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." (internal quotation marks omitted) (quoting *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 574 (Fla. 1st DCA 2010)). Mt. Hawley relies on the Tenants and Contractors Exclusion, which requires two elements: (1) a leased premises; and (2) bodily injury arising out of the leased premises. Mt. Hawley implicitly recognizes that it cannot meet the first element where it re-writes the Underlying Complaint in its Motion for Summary Judgment: Mt. Hawley's Motion for Summary Judgment represents that "the [Underlying] Complaint alleges [Frye] was a business invitee lawfully on ***Uncle Mick's***

5

premises . . . ." (D.E. 71 at Page 10 of 13) (emphasis added).[4]  However, the Underlying Complaint *actually* alleges that: "On or about December 14, 2014, Plaintiff, LESLIE J. FRYE, II, was a business invitee lawfully ***on the premises*** when he was attacked, assaulted and battered resulting in significant personal injury." (D.E. 1-2 at Page 3 of 18, ¶ 9). The Underlying Complaint, in turn, defines "premises" as the Jupiter Plaza as a whole:

> Defendants, ARTHUR R. ROEBUCK, III & PATRICIA R. SWINDLE TRS owned, operated, maintained and controlled the premises known as JUPITER WEST PLAZA. Said plaza is located at 6671 W. Indiantown Road, Jupiter, FL 33458 *(**Hereinafter the "Premises"**)*.

(D.E. 1-2 at Page 3 of 18, ¶ 5) (emphasis added).  The breadth of the *actual allegations* in the Underlying Complaint are therefore broad enough to include a set of facts where Frye was attacked in an area not leased to any tenant and therefore not "entirely" in an area controlled by Uncle Mick's as required to trigger the arguable application of the Tenants and Contractors Exclusion. *See, e.g.*, *Westport Ins. Corp.*, 761 F. Supp. 2d at 1343.

Assuming – only *arguendo* – that the Underlying Complaint *did allege* an attack on a premises leased by Uncle Mick's,  Mt. Hawley would still be required to show that Frye's claims for "bodily injury" as alleged in the Underlying Complaint  arose "directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant by any insured." (D.E. 1-1 at Page 46 of 63).  A review of the language of the Underlying Complaint reveals that there is *no allegation* connecting Frye's to the premises leased by Uncle Mick's.  At best, the Underlying Complaint makes only generalized allegations of negligence against all of the Insureds and Uncle Mick's for their individual and collective ownership,

---

[4] Earlier in the Mt. Hawley Motion, Mt. Hawley similarly mischaracterized the allegations of the Underlying Complaint, as follows: "FRYE alleges that on that date he was a ***business invitee at Uncle Mick's*** when he was attacked, assaulted, and battered resulting in significant personal injury." (D.E. 71 at Page 10 of 13) (emphasis added).

operation, maintenance, and control of the Jupiter West Plaza, as a whole. (D.E. 1-2 at Page 3 of 18, ¶¶ 5 – 7). For these reasons, Mt. Hawley cannot rely upon the Tenants and Contractors Exclusion to exclude coverage as Mt. Hawley has not, and indeed cannot, demonstrate "that the allegations of the [underlying] complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Westport Ins. Corp.*, 761 F. Supp. 2d at 1343.

## II. THE "ACTUAL FACTS" DO NOT TRIGGER THE TENANTS AND CONTRACTORS EXCLUSION

Where the allegations in the Underlying Complaint do not trigger the Tenants and Contractors Exclusion, Mt. Hawley is forced to improperly[5] cite facts that are both beyond the allegations in the Underlying Complaint and disputed. These extraneous, disputed facts still fall far short of showing (to the exclusion of any material fact) that the injuries suffered by Frye arise directly or indirectly from Uncle Mick's occupation, use, or maintenance "of any premises leased to" Uncle Mick's. *See* (D.E. 1-1 at Page 46 of 63).

Insurance contracts are construed according to their plain meaning and must be read as a whole, giving "every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Policy terms should be read in light of the skill and experience of ordinary people. *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1306 (11th Cir. 2008).

---

[5] Under the strict test delineated by *Jones*, *Trizec*, and *Grissom* (among many others), the insurer may utilize extrinsic facts <u>only</u> in the "exceptionally rare" case – not presented here where "the complaint omits reference to an uncontroverted fact that, if plead, would have clearly placed the claim outside the scope of coverage." *See, e.g.*, *Sinni v. Scottsdale Ins. Co.*, 676 F.Supp.2d 1319, 1323 (M.D. Fla. 2009). *But see Mt. Hawley Ins. Co. v. Tactic Sec. Enf't, Inc.*, 616CV1425ORL40TBS, 2017 WL 8316925, at *8-9 (M.D. Fla. Sept. 28, 2017), report and recommendation adopted, 616CV1425ORL40TBS, 2017 WL 6947453 (M.D. Fla. Nov. 15, 2017) (rejecting Mt. Hawley's argument that extrinsic facts should be considered in determining the duty to defend where there was conflicting evidence as to the facts triggering application of an exclusion in a liability insurance policy). As argued extensively in the Insureds' Motion for Summary Judgment, this is not a case in which "uncontroverted facts" demonstrate that an exclusion in the Mt. Hawley Policy abrogates its duty to defend the Insureds. To the contrary, the facts show that the exclusion was never triggered because the operations of Uncle Mick's and the attack on Frye are little more than coincidence – Frye simply intervened in a criminal attack he witnessed in the parking lot of Jupiter West Plaza.

Insuring clauses are "construed in the broadest possible manner to effect the greatest extent of coverage." *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997). In contrast, exclusionary clauses are strictly construed to afford the broadest possible coverage. *Id*. An insurer, therefore, "'cannot, by failing to define the terms . . . includ[ing] any additional qualifying or exclusionary language, insist upon a narrow, restrictive interpretation of the coverage provided.'" *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993) (citation omitted).

The injuries suffered by Frye are a consequence of an incidence of domestic violence between the assailant and his girlfriend, who were not known to Frye or Uncle Mick's. (To be clear, the trigger of the altercation was the assailant's domestic violence and not the a hypothetical "bar room brawl" that spilled out on the parking lot.) The altercation occurred in the *parking lot* of *Jupiter West Plaza* in an area that Uncle Mick's did not have a right to possess or control. More specifically:

  a. Scribe and Riviera are the owners of Jupiter West Plaza, a shopping center located at 6661-6791 West Indiantown Road in Jupiter, Florida (Blatt Dep.[6] at page 8, lines 18-19).

  b. Uncle Mick's is a bar located in the Jupiter West Plaza. (Martinson[7] Dep. at p. 9, line-13-19). Uncle Mick's is a defendant named in the Underlying Complaint. (D.E. 1-2).

  c. Frye's injuries occurred during an altercation with Paul Cleary ("Cleary"), the criminal assailant, that occurred in the parking lot of Jupiter West Plaza on December 14, 2014. (McNail Dep.[8] Page 32, Line 10, – Page 33, Line 7; Page 50, Line 13 – Page 51, Line 15 Page 75, Lines 11-17; Exhibit 10/D.E. 68, Police Report; D.E. 69;

---

[6] Citations to deposition transcripts are referred to herein by the last name of the deponent and the page and line of the transcript and/or exhibit containing the relevant testimony. In this case, "Blatt Dep." refers to the Transcript of the Deposition of Robert Blatt taken on June 8, 2018, which has been filed with the Court (D.E. 64).

[7] Transcript of the Deposition of Kent Martinson taken August 21, 2018 (D.E. 66).

[8] Transcript of the Deposition of Teresa McNail taken May 30, 2018 (D.E. 65).

Frye Dep.[9] Page 51, Lines 19 – 25). Specifically, Frye and Cleary's dispute occurred when Frye intervened in a dispute between Cleary and his girlfriend. (McNail Dep. Page 32, Line 10 – Page 33, Line 7; Page 50, Line 13 – Page 51, Line 15 Page 75, Lines 11-17; Exhibit 10/D.E. 68, Police Report; D.E. 69).

d. On the night of the altercation, Frye walked to his vehicle, which he had parked in an area of the Jupiter West Plaza parking lot that Uncle Mick's did not maintain, or control. (Blatt Dep. at Page 54, Line 14 – Page 55, Lines 1-5; Martinson Dep. at Page 31, Line 10-16; Blatt Dep. at Page 55; Blatt Dep. at Page 55, Lines 20-25; Blatt Dep. at Page 55, Lines 3-19; Frye Dep. Page 57, Lines 3 – 25; Page 58, Lines 2 – 13).

e. As Frye was walking to his vehicle that night, he heard screaming. Frye approached the "passenger rear" of his vehicle, heard screaming, and observed two women attempting to pry Cleary off of Cleary's girlfriend. The women were screaming "stop, stop, stop" at Cleary. In the midst of the screaming, Frye observed Cleary "grabbing" and "yanking on" his girlfriend (Frye Dep. Page 58, Lines 22 – 25; Frye Dep. Page 59, Lines 12 – 25; Frye Dep. Page 60, Lines 1 – 6; Frye Dep. Page 108, Lines 10 – 14).

f. Frye intervened and requested that Cleary cease his attack. (Frye Dep. Page 58, Lines 23 – 25; Frye Dep. Page 63 Line 24 – Page 64 Line 1). Immediately after Frye lodged his request, Cleary ran across the parking lot, attacked Frye, tackled Frye to the ground, and was on top of Frye. (Frye Dep. Page 62, Lines 1 – 23; Frye Dep. Page 62, Line 24 – Page 63, Line 1).

g. After Cleary briefly "went away," Frye got up from the ground, bleeding from his head, and attempted to access his vehicle. As he opened the vehicle door, Cleary appeared again, this time attempting to "sucker punch" Frye. (Frye Dep. Page 65, Lines 4 – 20).

h. Cleary then charged Frye for a second time at a full sprint. This time, Frye jumped and kicked Cleary in the chest. Frye and Cleary collided together, and Frye "hit the ground" for a second time. Frye attempted to stand but could not—he looked down and his chest was "open" and his leg was broken. Cleary had stabbed Frye. (Frye Dep. Page 66, Lines 6 – Page 69 Line 11).

i. Thereafter, the ambulances and the police arrived, and Frye was "life flighted" to the hospital. (Frye Dep. Page 69, Lines 12 – 18). Cleary, for his part, took "off running." (Frye Dep. Page 78, Lines 22 – 25).

j. There was no dispute between Frye and Cleary in Uncle Mick's before the stabbing. (Martinson Dep. at page 32, lines 20-22; Exhibit 8/D.E. 67, Response 9). And, Cleary was unknown to the bar prior to the altercation. (Martinson Dep. at Page 33, Lines 9-15).

---

[9] Transcript of the Deposition of Leslie Frye, II taken on February 6, 2017 (D.E. 72-10).

  k. Frye did not "have any idea" who Cleary and the women involved in the altercation were prior to being stabbed in the Jupiter West Plaza parking lot. (Frye Dep. Page 70, Lines 4 – 7; Frye Dep. Page 105, Lines 8 – 16).

  l. None of the employees of Uncle Mick's witnessed (and, thus, none were involved) in the dispute between Frye and Cleary. (Martinson Dep. at Page 35, Lines 5-7).

  Under these *actual* facts, Frye's injury cannot be reasonably interpreted as arising from Uncle Mick's operations, as Mt. Hawley argues in its Mt. Hawley Motion. Frye was the victim of a criminal attack that did not occur in Uncle Mick's, did not start in Uncle Mick's, and did not involve any employees of Uncle Mick's. Further, prior to the altercation in the Jupiter West Plaza parking lot, Frye had never seen or known any of the persons involved in the altercation. The assailant – Cleary – was not even known to Uncle Mick's prior to the altercation. Moreover, as outlined extensively in the Insureds' Motion for Summary Judgment, the incident in which Frye was injured occurred at a location that Uncle Mick's did not own, or control, and with respect to which Uncle Mick's did not have obligation to maintain, light, or provide security. (Blatt Dep. at Page 54, Line 14 – Page 55 Lines 1-25; Martinson Dep. at Page 31, Line 10 – Page 32, Line 9). At worst, the question of where, how, and why the altercation occurred is in material dispute.

  In short, it is simple coincidence that Frye and his assailant met in the parking lot of Jupiter West Plaza. The meeting might have occurred anywhere – motivated as it was by Frye's decision to act as a good Samaritan and not as a consequence of any operations of the Insureds' tenant (Uncle Mick's). The phrase "arising out of" requires more than such a coincidence. *See Taurus Holdings, Inc. v. United States Fidelity and Guaranty Co.*, 913 So. 2d 528, 539 (Fla. 2005), *citing Hagen v. Aetna Casualty and Surety Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996) ("The term 'arising out of'…means 'originating from,' 'having its origin in,' 'growing out of,'

'flowing from,' 'incident to,' or 'having a connection with.'"). There is simply no causal connection beyond a mere coincidence that connects Frye's injury with Uncle Mick's operations – Frye simply intervened in an attack wrought by Cleary against Cleary's own girlfriend and was stabbed as a result of it; an intervening intentional tort breaks any arguable causal connection between Frye's injuries and Uncle Mick's. The Florida decisional law interpreting the phrase "arising out of" compels this conclusion. *See, e.g.*, *Taurus Holdings*, 913 So. 2d at 539  (ruling that "arising" requires "*more than a mere coincidence* between the conduct (or, in this case, the product) and the injury.  *It requires some causal connection, or relationship.*" (emphasis added)).

Florida courts have analyzed insurance policies using the "arising out of" language and recognized that intervening intentional tort is not part of a business' operations.  Thus, for example, "professional services" cannot include intentional torts like sexual assault. *Lindheimer v. St. Paul Fire & Marine Ins. Co.*, 643 So. 2d 636, 639 (Fla. 3d DCA 1994) (emphasis added). As the Third District Court of Appeal explained:

> [T]he fact that an act occurred in a professional's office does not automatically transmute the [sexual assault] into a professional service.  ***The location of an act's occurrence is not determinative of liability.  There must be some causal connection between an act and the nature of the doctor-patient relationship***.

*Id*. at 638 (emphasis added).

Likewise, in *Buchanan v. Lieberman*, 526 So. 2d 969 (Fla. 5th DCA), a patient sued her doctor and his professional association for injuries she sustained as a result of the doctor's sexual battery upon her in his medical offices during the course of her scheduled visit. *Id.* at 970.  The trial court entered summary judgment for the defendants based on the two-year statute of limitations for medical malpractice actions. *Id.*  On appeal, the court concluded that the medical

11

malpractice statute of limitations did not apply to a battery action arising out of the doctor's alleged sexual assault in the doctor's medical offices during the course of her scheduled visit:

> [T]he injuries allegedly suffered by [the patient] arose from a battery and not from any medical diagnosis, treatment or care by Dr. Lieberman. *The battery only remotely arose from a doctor-patient relationship, that is, the only connection between the battery and the doctor-patient relationship is the fact that the battery occurred in the doctor's office*. Had Dr. Lieberman assaulted Mrs. Buchanan at a bar, that act would not be considered "medical malpractice". *The result should not be any different simply because of the locality of the act.*

*Id*. at 972 (emphasis added).

Like the assaults at issue in *Buchanan* and *Lindheimer*, Cleary's criminal assault on Frye in the parking lot of Jupiter West Plaza breaks any causal connection between Uncle Mick's operations and Frye's injuries. To accept Mt. Hawley's view of coverage here would be to accept the false equivalency that an unforeseen, unprovoked criminal stabbing of a man in a parking lot who intervened in a violent domestic dispute in that parking lot somehow arises from the operations of a restaurant from which the victim emerged. Such an interpretation of the Tenants and Contractors Exclusion would render coverage under the Mt. Hawley Policy meaningless and extirpate the general rule that insuring clauses are "construed in the broadest possible manner to effect the greatest extent of coverage." *Westmoreland*, 704 So. 2d 179. Mt. Hawley's Motion for Summary Judgement should be denied

**WHEREFORE,** Defendants ARTHUR R. ROEBUCK, III & PATRICIA R. SWINDLE TRS d/b/a JUPITER WEST PLAZA, RIVIERA TRADING AND MARKETING d/b/a JUPITER WEST PLAZA, and SCRIBE ENTERPRISES, INC. a/b/a JUPITER WEST PLAZA respectfully request that the Court enter partial summary judgment in their favor and against MT. HAWLEY INSURANCE COMPANY consistent with the Insured's Motion, deny the Mt.

Hawley Motion, award their attorneys' fees and costs in defending this action pursuant to §672.428, Fla. Stat., and grant such further relief as is deemed just and proper.

Dated this 2nd day of November, 2018.

Respectfully Submitted,

**Wargo & French, LLP**
*Counsel for Insureds*
201 S. Biscayne Blvd.
Suite 1000
Miami, Florida 33131
Telephone: (305) 777-6000
Facsimile: (305) 777-6001

By: /s/ *Michael C. Foster, Esq.*
Michael C. Foster, Esq.
Florida Bar No. 0042765
mfoster@wargofrench.com
Angelo M. Castaldi, Esq.
Florida Bar No. 0119098
acastaldi@wargofrench.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2018, I electronically filed the foregoing with the Clerk of Court, using CM/ECF. I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic filing generated by CM/ECF.

*/s/ Michael C. Foster*
Michael C. Foster

## SERVICE LIST

**9:17-cv-80213-KAM Notice has been electronically mailed to:**

Jack Thomas Frost    jfrost@kelleykronenberg.com, sdesouza@kelleykronenberg.com

Michael C. Foster    mfoster@wargofrench.com, cpatterson@wargofrench.com, Flservice1@wargofrench.com, lcruz@wargofrench.com