UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  17-CV-80213-MARRA

MT. HAWLEY INSURANCE
COMPANY,

      Plaintiff,

vs.

ARTHUR R. ROEBUCK III &
PATRICIA R. SWINDLE TRS
d/b/a JUPITER WEST PLAZA;
RIVIERA TRADING AND MARKETING,
INC. d/b/a JUPITER WEST PLAZA;
SCRIBE ENTERPRISES, INC. d/b/a
JUPITER WEST PLAZA; and
LESLIE J. FRYE, II,

      Defendants.
_____/

## ORDER AND OPINION

**THIS CAUSE** is before the Court upon Plaintiff Mt. Hawley Insurance Company's

("Mt. Hawley") Dispositive Motion for Summary Judgment [DE 71], and Defendants'

Motion for Partial Summary Judgment on the Complaint for Declaratory Relief [DE

70].  Mt. Hawley's single-count complaint seeks a declaratory judgment that it has no

duty to defend or indemnify its policy holders (the owners of a shopping center that

lease space to a bar/restaurant called Uncle Mick's) for liability claims brought by a

patron of Uncle Mick's.  Mt. Hawley moves for summary judgment in its favor finding

there is no coverage under the Mt. Hawley policy for the claims asserted in the

underlying liability complaint,[1] and Defendants move for partial summary judgment finding that Mt. Hawley has a continuing duty to defend the claims asserted against the policy holders in an underlying liability complaint.[2]  The motions are fully briefed[3] and ripe for review.  The Court has carefully considered the entire Court file and is otherwise fully advised in the premises.

This insurance coverage dispute arises out of an altercation between Leslie J. Frye, II ("Frye") and Paul Cleary ("Cleary") which occurred on December 14, 2014, in the parking lot for Uncle Mick's Bar and Grill ("Uncle Mick's") located in Jupiter, Florida.  The altercation ended with Frye being stabbed.

Frye filed a lawsuit against Mt. Hawley's insureds, Arthur R. Roebuck, III ("Roebuck"), Patricia R. Swindle ("Swindle"), Riviera Trading and Marketing, Inc. d/b/a Jupiter West Plaza ("Riviera Trading"), and Scribe Enterprises, Inc. d/b/a Jupiter West Plaza ("Scribe") (together, "Policy Holders") to recover for the injuries and damages he allegedly sustained as a result of the December 14, 2014 stabbing.

Upon receiving notice of the lawsuit, Mt. Hawley tendered the defense of its Policy Holders to Uncle Mick's primary commercial general liability insurer, Conifer Insurance Company ("Conifer").  Conifer did not accept Mt. Hawley's tender.  The parties dispute whether Mt. Hawley's insurance policy provides coverage of Frye's

---

[1]  *See infra* ¶¶ 7-12.

[2]  *Id.*

[3]   No reply was filed to Defendants' Motion for Partial Summary Judgment.

lawsuit.

Mt. Hawley has filed a single-count complaint seeking a declaratory judgment that it has no duty to defend or indemnify[4] the Policy Holders for the claims brought by Frye.  Mt. Hawley does not argue that the alleged facts do not bring Frye's cause within the coverage of the insurance policy.  Rather, Mt. Hawley argues it has no duty to defend claiming the Policy Holders have failed to satisfy a condition precedent to coverage.  Specifically, "[b]y reason of Conifer's refusal to defend and indemnify the Mt. Hawley insureds on Frye's claims, on a primary basis, under a policy with limits equal to or greater than the liability limits of the Mt. Hawley policy, there has been a failure on the part of Defendants to comply with the condition precedent set forth in Paragraph 4 of the Conditions of Coverage endorsement."[5]

---

[4]  Mt. Hawley seeks both a determination of a duty to defend and a duty to indemnify.  Should the Court ultimately determine that Mt. Hawley has no duty to defend the Policy Holders in the Frye lawsuit, such a conclusion will be dispositive of the duty to indemnify.  *See Clarendon Nat'l Ins. Co. v. Vickers*, 05-60805-CIV, 2006 WL 8434796, at *3 (S.D. Fla. May 25, 2006) ("It is well-settled law in Florida that where an insurer has no duty to defend, it has no duty to indemnify its insured.").  On the other hand, if the Court concludes that Mt. Hawley owes the Policy Holders a defense, it would be premature to decide the question of indemnity until such time as the Frye suit has resulted in a final judgment, settlement, or other final resolution.  *See Scottsdale Ins. Co. v. Klub Kutter's Bar & Lounge, LLC,* 17-CV-61321, 2018 WL 1933702, at *6 (S.D. Fla. Apr. 24, 2018) (determining that insurer had a duty to defend the insured and staying the proceedings on the indemnity issue until the underlying case resulted in a final judgment, settlement, or final resolution through some other means); *Mt. Hawley Insurance Company v. Maitland Center, LLC*, 2018 WL 3634579, at *4 (S.D. Fla. 2018) (same).

[5]  DE 79 at 3.

The Policy Holders respond that "nothing in the 'eight corners' of the Underlying Complaint and the Mt. Hawley Policy . . . demonstrate that the allegations in the Underlying Complaint fall exclusively within the Tenants and Contractors Exclusion . . ."[6] The Policy Holders further assert that if the Court were to take the impermissible step and look at facts beyond the allegations in the Frye Complaint, those facts do not trigger the Tenants and Contractors Endorsement.[7] The Policy Holders move for partial summary judgment finding that Mt. Hawley has a continuing duty to defend them in the Frye matter.

---

[6]  DE 77 at 3.

Mt. Hawley identifies the Tenants and Contractors Endorsement as a *condition precedent* to coverage; Defendants identify it as an *exclusion* to coverage.  The Tenants and Contractors Endorsement is a condition precedent, not an exclusion, to coverage.

"A condition precedent is one that is to be performed before the agreement becomes effective . . . the implication is that the terms of a contract have been agreed on but that some act must be performed, or some event occur, before it shall be binding on the parties.  An exclusion, on the other hand, is to declare that there never was insurance with respect to the excluded risk."  6 Couch on Ins. § 81:19 (3d ed. 2018); *Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, 649 F. Supp. 2d 1363, 1369 (S.D. Fla. 2009); *State Farm Mut. Auto. Ins. Co. v. Curran*, 135 So.3d 1071, 1083 (Fla. 2014) citing Black's Law Dictionary 334 (9th ed. 2009) defining a "condition precedent" as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises."

The Policy clearly states that if a tenant fails to have primary commercial general liability insurance with limits equal to or greater than $1,000,000 prior to, or at the commencement of, the lease, Mt. Hawley has no obligation to defend or indemnify the Policy Holders for injuries arising directly or indirectly from the occupation, use or maintenance of any premises leased to a tenant.  The endorsement does not exclude risk.  Rather it identifies the conditions that have to be met before there is the potential for coverage for bodily injury claims under the Mt. Hawley Policy.  *See infra* ¶ 6.

[7]  DE 77 at 6.

**Undisputed Material Facts**

*The Mt. Hawley Policy*

1.   Mt. Hawley issued a commercial general liability insurance policy to Susi

Holdings, Inc. as named insured for the period from May 25, 2014 to May 25,

2015; Policy No. MGL017764 (the "Mt. Hawley Policy").[8]

2.   The Mt. Hawley Policy also names Riviera Trading, Scribe and their joint

venture partners as insureds, and lists 6661-6791 W. Indiantown Rd., Jupiter,

Florida as an insured location.[9]

3.   With respect to the coverage for bodily injury liability, the Mt. Hawley policy

states, in pertinent part, as follows:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a.   We will pay those sums that the insured becomes
        legally obligated to pay as damages because of
        "bodily injury" or "property damage" to which this
        insurance applies. We will have the right and duty to
        defend the insured against any "suit" seeking those
        damages. However, we will have no duty to defend
        the insured against any "suit" seeking damages for
        "bodily injury" or "property damage" to which this
        insurance does not apply.[10]

---

[8]  DE 1-1 at 6.

[9]  DE 1-1 at 9.

[10]  DE 1-1 at 10.

4.     The Mt. Hawley Policy defines the term "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[11]

5.     The Mt. Hawley Policy defines the term "suit," in part, as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."[12]

6.     The Mt. Hawley Policy contains an endorsement, Form No. CGL 102B (12/12), titled TENANTS AND CONTRACTORS - CONDITIONS OF COVERAGE ("Tenants and Contractors Endorsement"), which reads in pertinent part as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
TENANTS AND CONTRACTORS – CONDITIONS OF COVERAGE

We shall have no obligation to defend or indemnity any insured for any "bodily injury," "property damage," and/or "personal and advertising injury" **arising directly or indirectly from a commercial tenant's occupation, use or maintenance of any premises leased to such tenant** by any insured, such tenant's operations of any kind, or work by a "contractor" unless each and every of the following conditions is satisfied:

1.     Certificates of insurance are obtained from the tenant prior to commencement of the lease. Such certificates of insurance must list primary commercial general liability coverage in effect for the entirety of the tenancy.

2.     Written agreements are obtained from the tenant which hold harmless and indemnify the insured(s) against whom the claim is made for all injuries, claims, and suits arising directly or indirectly from the tenant's use or maintenance of any premises leased to the tenant by any insured, or from the tenant's operations of any kind. Such agreements must expressly provide indemnification to the fullest extent permitted by law. Such agreements must be contained in the lease agreement and be signed by the parties to the lease prior to or at the commencement of the lease.

---

[11]  DE 1-1 at 23.

[12]  DE 1-1 at 25.

3. The lease agreement must also require in writing that the tenant will obtain additional insurance coverage under its primary commercial general liability policy for each insured(s) against whom the claim is made. Such agreements must be contained in the lease agreement and be signed by the parties to the lease prior to or at the commencement of the lease. Such agreements must require limits of additional insured coverage equal to or greater than the limits of this policy. Such agreements must state that the additional insured coverage is to primary and noncontributory.

4. The tenant's primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for "bodily injury," "property damage," and/or "personal and advertising injury," and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy.[13]

*The Underlying Complaint*

7.   On or about September 17, 2015, Frye filed a lawsuit styled *Leslie J. Frye, II*

*vs. Uncle Mick's Inc. d/b/a Uncle Mick's Bar & Grill; Jupiter West Plaza;*

*Arthur R. Roebuck, III, and Patricia R . Swindle TRS, d/b/a Jupiter West Plaza;*

*Riviera Trading and Marketing, Inc. d/b/a Jupiter West Plaza; and Scribe*

*Enterprises, Inc. d/b/a Jupiter West Plaza* ("Defendants"), in the Circuit Court

of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case

No. 2015-CA-010556 (AF) (the "Underlying Complaint").[14]  It alleges five counts

of negligence.

---

[13]  DE 1-1 at 46 (emphasis added).

[14] DE 1-2; DE 72-2 (Amended Complaint).

8.      The Underlying Complaint seeks recovery for personal injuries allegedly suffered by Frye.[15]

9.      The Underlying Complaint alleges that "On or about December 14, 2014, [Frye] was a business invitee lawfully on the premises when he was attacked, assaulted and battered resulting in significant personal injury."[16]

10.     The Underlying Complaint alleges that the Policy Holders "owned, operated, maintained and controlled the premises known as Jupiter West Plaza.  Said plaza is located at 6671 W. Indiantown Road, Jupiter, FL 33458.  (Hereinafter the "Premises")."[17]

11.     The Underlying Complaint alleges that the incident involving Frye occurred in the parking lot of the Jupiter West Plaza.[18]

12.     Each of the Policy Holders is alleged to have owed Frye a duty of care because each owned, leased, operated, possessed, controlled, and/or maintained the premises including the parking lot.[19]

———————————————

[15]  *Id.*

[16]  DE 72-2, ¶ 9.

[17]  DE 72-2, ¶¶ 5-7.

[18]  *See, e.g.*, DE 72-2, ¶¶ 20, 26, 35, 41 (alleging generally that Defendants breached their duty of care for failure to protect the parking lot).

[19]  *See, e.g.,* DE 72-2, ¶¶ 5, 6, 7, 22, 37.

*The Mt. Hawley Complaint*

13.    Mt. Hawley's Complaint in the case at bar sets forth a single count for

declaratory relief (the "Mt. Hawley Complaint").[20]

14.    The Mt. Hawley Complaint asks this Court to determine that Mt. Hawley has

"no duty to defend or indemnify" the Policy Holders.[21]

*The Jupiter West Plaza*

15.    Scribe and Riviera Trading (as part of a joint venture) own Jupiter West Plaza,

including the parking lot.[22]

16.    The Jupiter West Plaza is a shopping center with multiple tenants and Uncle

Mick's leases two of the suites at the shopping center.[23]

17.    All of the tenants at Jupiter West Plaza have use of the parking lot.[24]

18.    Precise Property, on behalf of the landlords, maintains the parking lot,

including the lighting.[25]

---

[20]  DE 1.

[21]  DE 1 at 10.

[22]  Transcript of the deposition of Robert Blatt, corporate representative for the landlord, taken June 8, 2018 ("Blatt Dep.").  DE 64-1 at 8.

[23]  DE 37-1 at 22; Transcript of the deposition of Kent Martinson, corporate representative of Uncle Mick's, taken August 21, 2018 ("Martinson Dep.").  DE 66, also DE 72-3 at 9.

[24]  Blatt Dep. at 41.

[25]  Blatt Dep. at 55.

*Uncle Mick's Bar and Grill*

19.    Uncle Mick's is located in the Jupiter West Plaza and is a defendant named in

the Underlying Complaint.

20.    On December 14, 2014, Uncle Mick's was a tenant under a written lease

agreement entered into with Riviera Trading and Scribe for the premises

located 6671 W. Indiantown Rd, Jupiter, FL ("Lease Agreement").[26]

21.    Section 7.A. of the Lease Agreement provides, in relevant part, that:

**7.  Common Use Areas and Facilities**:

A. All facilities furnished in the Shopping Center and designated for the general common use of occupants of the Shopping Center, including the Tenant, …which facilities include but are not limited to, parking areas …, **shall at all times be subject to the exclusive control and management of the Landlord …**

… Tenant, his customers and invitees, shall have the right, during the term of this Lease, to use such parking area in common with other Tenants of the Shopping Center, subject to the terms herein. Tenant shall keep the sidewalks immediately abutting the leased premises free from obstructions of all nature and properly swept.[27]

22.    Section 7.B. of the Lease Agreement further provides, in relevant part, that:

B. Cost of Common Area Maintenance:

The Tenant agrees to pay to the Landlord, as additional rent, its proportionate share of the total cost **incurred by the Landlord in operating and maintaining the common area in the Shopping Center.**

* * *

---

[26]  DE 72-4.

[27]  DE 37-1at 5 (emphasis added).

... **"Common Area"** ... shall mean all areas space ... provided by Landlord for the common or joint use and benefit of the Tenants and occupants of the Shopping Center, and their employees, agents, servants, customers and other invitees, including without limitation, **parking areas** ...[28]

Therefore, the Lease Agreement gives Uncle Mick's and its patrons the right to use the parking lots of the shopping center for its business operations.[29]  In addition, Uncle Mick's pays, as additional rent, a proportionate share of the cost to maintain the parking lots, the lighting and other common areas of the shopping center.[30]

23.    Uncle Mick's has a rear entrance that is used by patrons to access the parking spots located behind the bar.[31]

24.    The area of the parking lot where the assault on Frye occurred is an area where patrons of Uncle Mick's are permitted to park.[32]

25.    Uncle Mick's does not have the right to control the parking lot adjacent to it's premises, and has no responsibility to provide lighting for the parking lot at Jupiter West plaza.[33]

---

[28]  *Id.* (emphasis added).

[29]  Blatt Dep. at 57.

[30]  Blatt Dep. 57–58; Martinson Dep. at 24.

[31]  Martinson Dep. at 10.

[32]  Martinson Dep. at 21-23; Blatt Dep. at 41.

[33]  Blatt Dep. at 55; Martinson Dep. at 31-32.

26.   Each night, employees of Uncle Mick's clean up any rubbish that is in the

immediate area outside the rear entrance to the bar.[34]

*Leslie Frye*

27.   Frye, the plaintiff in the underlying liability action, was a patron at Uncle

Mick's on December 14, 2014.[35]  He and a friend, Patrick Dunn ("Dunn"),

shared a pitcher of beer and some chicken wings.[36]

28.   At some point Frye went out the back door of Uncle Mick's bar, and into the

parking lot where his van was parked.[37]

29.   Frye had not yet gotten to his van, when he heard screaming.[38]

30.   Frye saw two women trying to get a guy off another woman, and yelled for the

man to stop.[39]

31.   The man, later identified as Cleary, then came running across the parking lot

and attacked Frye, stabbing him with a knife.[40]

---

[34]  Martinson Dep. at 36.

[35]  Transcript of the deposition of Leslie Frye, taken February 6, 2017, DE 72-10
at 51 ("Frye Dep.").

[36]  *Id*. at 54.

[37]  *Id*. at 55; 58.

[38]  *Id*. at 58.

[39]  *Id*. at 59.

[40]  *Id*. at 62; 78.

32.   A few moments later, Frye's friend, Dunn, came out of the back door of Uncle Mick's and came to Frye's assistance, tackling Cleary.[41]

33.   While Dunn was on top of Cleary, another unidentified person kneed Dunn off of Cleary.  Frye had seen this unidentified person inside Uncle Mick's bar earlier that evening.[42]

34.   Frye's injuries occurred during the altercation with Cleary in the parking lot of Jupiter West Plaza.[43]  Cleary was unknown to Frye or Uncle Mick's before the stabbing.[44]

35.   When the altercation in the parking lot occurred, Uncle Mick's was operational and open for business.[45]

36.   The parking lot where the altercation occurred is used by patrons of Uncle Mick's with the Landlord's knowledge and consent.[46]

---

[41]   *Id*. at 56-57; 68–69.

[42]   *Id*. at 70-71.

[43]   Transcript of the Deposition of Teresa McNail, Assistant Vice President of claims for Mt. Hawley, taken May 30, 2018 ("McNail Dep."), DE 65 at 32–33, 50–51, 75.

[44]   Martinson Dep. at 33; Frye Dep. at 70.

[45]   Martinson Dep. at 15.

[46]   Blatt Dep. at 57.

*Conifer Insurance Company*

37.   On December 14, 2014, Uncle Mick's was insured under a commercial general liability policy issued by Conifer Insurance Company.[47]

38.   Uncle Mick's policy of liability insurance with Conifer provides only $50,000 in coverage for assault and battery claims.[48]

39.   The Conifer policy does not have liability limits equal to or greater than the limits of the Mt. Hawley Policy which has liability limits of $1,000,000 per occurrence.[49]

40.   After Frye filed suit, on April 23, 2015, Mt. Hawley tendered the defense of its policyholders to Conifer.[50]

41.   Conifer has not accepted Mt. Hawley's tender of its policyholders' defense in the Frye lawsuit.[51]

**Standard of Review**

Summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment upon application of the law to the undisputed material facts.  Fed. R. Civ. P. 56(a).  In determining whether

---

[47]  *See* Conifer Policy, DE 72-5.

[48]  *Id.* at 64.

[49]  *Id.*

[50]  McNail Dep. at 69–70.

[51]  *Id.* at 39; 74.

there is a disputed issue of material fact, courts must draw all reasonable inferences in favor of the party opposing summary judgment.[52]  Although cross-motions for summary judgment "'may be probative of the non-existence of a factual dispute'" they "'will not, in themselves, warrant [the granting of] summary judgment.'"[53] However, where summary judgment turns on a pure question of law, such as the interpretation of an unambiguous contract provision, there are no relevant factual disputes.[54]  "Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law."[55]

---

[52] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013).

[53] *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)).

[54] *See Fernandez v. Homestar at Miller Cove, Inc.*, 935 So.2d 547, 550 (Fla. Dist. Ct. App. 2006); *Fayad v. Clarendon Nat. Ins. Co.*, 899 So.2d 1082, 1085 (Fla. 2005).

[55] *Amerisure Ins. Co. v. Auchter Co.*, 16-CV-407-J-39, 2018 WL 4293149, at *10 (M.D. Fla. 2018) citing *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001): *see also Maryland Cas. Co. v. Fla. Atl. Orthopedics. P.L.*, 771 F. Supp. 2d 1328, 1331-32 (S.D. Fla. 2011).

The insured bears the burden of proving the claim falls within the Policy's affirmative grant of coverage.[56]  Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion (often contained within an endorsement) applies to the coverage.[57]  If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion.[58]

## Discussion

Mt. Hawley maintains that it has no obligation to defend or indemnify the Policy Holders in the Frye litigation.  According to Mt. Hawley, this is because Frye's claims arises directly or indirectly from Uncle Mick's occupation or use of the leased premises.  This fact, according to Mt. Hawley, triggers the Policy Holders to meet each and every condition set forth in the Policy's Tenants and Contractors Endorsement - Conditions of Coverage.  "By reason of Conifer's refusal to defend and indemnify the Mt. Hawley insureds on Frye's claims, on a primary basis, under a policy with limits equal to or greater than the liability limits of the Mt. Hawley policy, there has been a failure on the part of [Uncle Mick's] to comply with the condition

---

[56] *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. Dist. Ct. App. 2005); *Hudson Ins. Co. v. Double D Mgmt. Co., Inc.,* 768 F.Supp. 1542 (M.D. Fla. 1991).

[57] *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997); *Hermitage Ins. Co. v. Studio, Inc. Night Club Corp.*, 08-CV-330, 2009 WL 103664, at *3 (M.D. Fla. 2009).

[58] *Id.*

precedent set forth in Paragraph 4 of the Conditions of Coverage endorsement."[59]

**Eight Corners Rule**

Florida[60] law places on the insured the burden of proving that a claim against it is covered by the insurance policy.[61]  In Florida, "the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses."[62]  Florida refers to this as the eight corners rule — solely comparing the third party's filings to the language of the insurance policy, including the endorsements, to determine an insurer's duty to defend.[63]  This means Mt. Hawley's duty to defend arises if the facts and legal theories in Frye's filings against the Policy

---

[59]  DE 79 at 3.

[60]  The Court is *Erie*-bound by Florida law in deciding this diversity case.  *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938); *Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289, 1291 (11th Cir. 2006).

[61]  *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) citing *Hudson Ins. Co. v. Double D Mgmt. Co., Inc.*, 768 F.Supp. 1542 (M.D. Fla. 1991).

[62]  *Morette Co. v. Southern-Owners Ins. Co.*, 301 F. Supp. 3d 1175, 1182 (N.D. Fla. 2017) quoting *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.,* 771 So.2d 579, 580-81 (Fla. Dist. Ct. App. 2000); *see also, Jones v. Florida Ins. Guar. Ass'n, Inc.,* 908 So.2d 435, 442-43 (Fla. 2005); *James River Ins. Co. v. Ground Down Eng'g, Inc.,* 540 F.3d 1270, 1275 (11th Cir.2008) ("the duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured"); *National Union Fire Ins. Co. v. Lenox Liquors, Inc.,* 358 So.2d 533, 536 (Fla. 1977).

[63]  *Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1259 (S.D. Fla. 2013).

Holders potentially bring the suit within the policy coverage.[64]

"Under Florida law, an insurance provider's duty to defend an insured party 'depends solely on the facts and legal theories alleged in the pleadings and claims against the insured.'"[65] "The duty to defend 'arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage.'"[66] "Thus, an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy."[67] "When the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend."[68] Accordingly, "there generally is no need for a

---

[64] *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 513 F.App'x 927, 931 (11th Cir. 2013); *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So.2d 533, 536 (Fla. 1977); *Amerisure Ins. Co. v. Orange & Blue Const., Inc.*, 913 F. Supp. 2d 1363, 1368 (S.D. Fla. 2012) (Marra, J.); *Foremost Signature Insurance Company v. Silverboys, LLC,* Case No. 17-20581-CV, 2018 WL 279361, at *3 (S.D. Fla. 2018); *First Specialty Ins. Corp. v. Milton Constr. Co.,* No. 12–20116, 2012 WL 2912713, at *3 (S.D. Fla. July 16, 2012).

[65] *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (quoting *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008)).

[66] *Id.* (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995); *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So. 2d 686, 691 (Fla. Dist. Ct. App. 2006)).

[67] *Id.* (quoting *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC,* 601 F.3d 1143, 1149 (11th Cir. 2010)) (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. Dist. Ct. App.  1997)).

[68] *Id.* (quoting *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005)) (quoting *Baron Oil Co. v. Nationwide Mut. Fire. Ins. Co.*, 470 So. 2d 810, 814 (Fla. Dist. Ct. App. 1985) (even though both parties conceded that plaintiff suing

declaratory action in respect to the insurer's obligation to defend."[69]  In contrast, if

the alleged facts and legal theories do not fall within a policy's coverage, no duty to

defend arises.[70]

## Exception to the Eight Corners Rule

Mt. Hawley asserts that

[t]he determination of whether Mt. Hawley has a duty to defend
requires consideration of extrinsic evidence, as the facts necessary to
determine Mt. Hawley's obligations under the policy are not of the type
that would be alleged in the underlying complaint.  The facts concerning
whether the insureds have complied with the conditions precedent for
coverage under the Conditions of Coverage endorsement would not be
alleged in the underlying liability action, *i.e.*, whether the "tenant's
primary commercial general liability insurer agreed to defend and
indemnify every insured against whom the claim is made for "bodily
injury," … and does so on a primary basis under a policy with limits
equal to or greater than the limits of the [Mt. Hawley] policy."  Thus,
the Court is permitted to look at extrinsic evidence to determine
whether, in light of the conditions precedent to coverage set forth in
the Conditions of Coverage endorsement, Mt. Hawley has a duty to
defend and indemnify the Defendants in the underlying liability action.

DE 79 at 6.

---

Baron in the underlying suit was an employee of the company — a fact which
triggered an exclusion in Baron's insurance policy, the complaint itself did not
mention this fact and the court thus found that the insurer had a duty to defend even
when the actual facts clearly showed that the claims were not covered).  470 So. 2d
at 811-812, 814.

[69]  *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 (Fla. 2004)
("*Higgins*").

[70]  *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1584 (11th
Cir. 1995).

"Florida courts have found . . . that in special circumstances, a court may

consider extrinsic facts if those facts are undisputed, and, had they been pled in the

complaint, they clearly would have placed the claims outside the scope of

coverage."[71]  "[H]owever, such cases are best viewed 'as exceptional cases in which

courts have crafted an equitable remedy when it is manifestly obvious to all involved

that the actual facts placed the claims outside the scope of coverage.'"[72]

_____

[71] *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323-1324 (11th Cir. 2014) ("*Stephens*") citing *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026 (Fla. Dist. Ct. App. 1989) ("*Nateman*") (recognizing and applying exception on issue of who is an insured); *see also, Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1103 (Fla.  Dist. Ct. App. 1995) ("*Keen*") (consideration of uncontroverted fact not contained in underlying complaint permitted in determining duty to defend where "[t]he insured conceded to the carrier shortly after the incident that a critical and objective fact placed any claim beyond coverage."); *Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F. Supp. 2d 1142, 1144, 1146, 1150 (M.D. Fla. 2005) ("*STD Enterprises*") (equitable departure from the general treatment of a duty to defend because employee failed to mention in his complaint that he was using vehicle for business purposes, a fact that would have barred coverage under the exclusion).

[72] *Stephens*, 749 F.3d at 1323-24 (quoting *First Specialty Ins. Corp. v. 633 Partners, 1324 Ltd.*, 300 F.App'x 777, 786 (11th Cir. 2008) (unless it is "manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage," *Keen* and *STD Enterprises* should be regarded as exceptional cases, and citing a case deeming *Keen* to be an aberration); *Addison Insur. Co. v. 4000 Island Blvd. Condo. Assoc., Inc.*, 721 F.App'x 847, 854 (11th Cir. 2017); *see also, Higgins*, 894 So. 2d at 10 n.2 ("One example [of such a special circumstance] would be when the insurer claims that the insured did not provide sufficient notice of the claim and therefore breached an assistance and cooperation clause.  In such circumstances, we believe the courts may entertain a declaratory action seeking a determination of a factual issue upon which the insurer's duty to defend depends"); *Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So. 3d 565, 574-75 (Fla. Dist. Ct. App. 2010) ("*Acosta*") (where policy contained a prior litigation exclusion, it was proper to consider the complaint from a previously-filed action); *Nateman*, 544 So. 2d at 1027 (considering facts outside the complaint because the defendant in the underlying action was clearly not

Mt. Hawley argues that resort to extrinsic evidence is appropriate to determine whether the Policy Holders complied with the conditions of coverage under the Tenants and Contractors Endorsement.  Citing *Higgins, Acosta* and *Keen*, Mt. Hawley asserts, "Florida law sanctions consideration of extrinsic evidence on the issue of Defendants' compliance with the conditions precedent for coverage under the Conditions of Coverage Endorsement because the Frye Amended Complaint omits reference to uncontroverted facts that, if pled, clearly establish there is no coverage under the Mt. Hawley policy."[73]

**Analysis of Coverage**

Here, the Policy's Tenants and Contractors Endorsement, in pertinent part, excuses Mt. Hawley from defending the Frye Action *if* (a) Frye's injuries arose directly or indirectly from Uncle Mick's occupation, use or maintenance of the leased premises *and* (b) Confier, Uncle Mick's primary commercial general liability insurer,

---

insured by the insurer and "[t]he insurer is not obligated to provide a defense for a stranger merely because the plaintiff alleges that the defendant is an insured or alleges facts which, if true, would make the defendant an insured"); *Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F.App'x 861, 866 (11th Cir. 2014) ("*Composite Structures*") (considering the "uncontroverted date of written notice [sent from the insured to the insurer] when determining [insurer's] duty to defend because the date of written notice to the insurance company is not a fact that would normally be alleged in the complaint"); compare with *Mid-Continent Casualty Company v. Gozzo Development, Inc.*, 17-CV-80362, 2017 WL 3578846, at *2–3 (S.D. Fla. 2017) ("*Gozzo*") (court declined to consider extrinsic evidence to determine whether Defendants had formed a joint venture where policy had a joint venture exclusion, and Defendants did not allege or concede they had formed a joint venture).

[73] DE 81 at 6.

does not agree to defend and indemnify Uncle Mick's for bodily injury on a primary basis under a policy with limits equal to or greater than $1,000,000.[74]  Mt. Hawley argues that because it is undisputed that Uncle Mick's did not have insurance with the required limits, and Confier has not agreed to defend and indemnify Defendants, summary judgment in its favor is appropriate.  However, by its terms, the Tenants and Contractors Endorsement excludes coverage *only if* Frye's injuries arose directly or indirectly from Uncle Mick's  "occupation, use or maintenance of" the leased property.  The parties hotly dispute whether Frye's injuries can be reasonably interpreted as arising directly or indirectly from Uncle Mick's occupation, use or maintenance of the leased property.

There is nothing in the Frye Complaint that obviously resolves this question.  It alleges Frye was a business invitee lawfully on the premises when he was attacked, assaulted and battered resulting in significant personal injury.[75]  The Complaint, in turn, defines "premises" as the Jupiter Plaza as a whole:

> Defendants, ARTHUR R. ROEBUCK, III & PATRICIA R. SWINDLE TRS owned, operated, maintained and controlled the premises known as JUPITER WEST PLAZA.  Said plaza is located at 6671 W. Indiantown Road, Jupiter, FL 33458 (Hereinafter the "Premises").

Am. Complaint, ¶ 5.  The Amended Complaint also alleges that all of the named

---

[74]  DE 1-1 at 46.  It is undisputed that Uncle Mick's commercial general liability insurer, Conifer, has not agreed to defend and indemnify, on a primary basis, the Policy Holders against the claims asserted against them in the Frye action under a policy with limits equal to or greater than the limits of the Mt. Hawley Policy.

[75]  DE 72-2 (Amended Complaint), ¶ 9.

defendants "leased, operated, possessed, controlled, and/or maintained the premises including the parking lot."[76]  The Amended Complaint therefore makes generalized allegations of negligence against all of the Insureds and Uncle Mick's for their individual and collective ownership, operation, maintenance, and control of the Jupiter West Plaza, as a whole.

The Policy Holders point to the following facts that they claim demonstrate that Frye's injuries did not arise from Uncle Mick's occupation, use or maintenance of the leased property:

• Prior to the altercation in the parking lot, Frye had never seen or known any of the persons involved in the altercation.

• The assailant, Cleary, was not know to Uncle Mick's prior to the altercation.

• The altercation did not occur in Uncle Mick's, did not start in Uncle Mick's, and did not involve any employees of Uncle Mick's.

• Frye was attacked in an area not controlled by Uncle Mick's and which Uncle Mick's had no obligation to maintain, light, or provide security.

Thus, the Policy Holders maintain that the incident was motivated by Frye's decision to act as a good Samaritan and not as a consequence of any operation of Uncle Mick's.  Therefore, whether Frye's injuries arose directly or indirectly from the operation of Uncle Mick's is disputed.

---

[76]  Am. Compl. ¶ 10 (Uncle Mick's), ¶ 16 (Jupiter West Plaza), ¶ 22 (Arthur R. Roebuck III & Patricia R. Swindle), ¶ 28 (Riviera Trading and Marketing, Inc. d/b/a Jupiter West Plaza), ¶ 37 (Scribe Enterprises, Inc. d/b/a Jupiter West Plaza).

Mt. Hawley takes a different view.  It asserts that by including bodily injury that arises *indirectly* from the tenant's operations *of any kind*, occupation or use of the leased premises, the Mt. Hawley Policy's Tenants and Contractors Endorsement includes even those claims that may not in a direct, clear or obvious way arise from Uncle Mick's occupation or use of the leased premises.  "If Frye had not been at the bar that night, and if he had not parked his car behind Uncle Mick's in spaces that Defendants permitted their tenant Uncle Mick's patrons to use, this altercation would not have occurred.  However, it did and Frye's injuries were a result of it."[77]  It points to the following facts that it claims support its position:

- The events on the night in question all involved persons who were business invitees of Uncle Mick's.[78]
- Frye's sole reason for being there that night was to go to Uncle Mick's.

- The altercation broke out in the parking lot used by Uncle Mick's customers, between two of its patrons who moments earlier had been inside the bar.

- While Cleary and his girlfriend were arguing in the parking lot, Frye exited the bar and yelled something at Cleary.  That was when the altercation between Cleary and Frye began, resulting in Frye being stabbed by Cleary.

---

[77]  DE 81 at 4-5.

[78]  It is disputed, but Mt. Hawley asserts that "[t]he argument between Cleary and Frye that led to the altercation between Cleary and Frye started in the bar and continued out into the parking lot."  DE 81 at 4.  Cleary's girlfriend has averred that, "[w]hile on the premises at Uncle Mick's, I saw a man who was later identified as Leslie Frye be aggressive with other customers inside the bar.  Paul Cleary and Shawn Budd tried to calm Mr. Frye, and bought him a beer. . .  While Paul Clear[y] and I were arguing in the parking lot, Mr. Frye exited Uncle Mick's through the rear door, and yelled something at Paul.  This led to a confrontation between Mr. Frye and Paul Cleary there in the parking lot of Uncle Mick's."  *See* Ashley Viner Affidavit (DE 72-13), ¶¶ 6, 7, 11, 12.  These facts are disputed.

- Uncle Mick's pays a common area maintenance fee to its landlord to use the parking lot and patrons of Uncle Mick's are authorized to use the parking lot when visiting the bar.

- Frye had parked his van in the parking lot before entering the bar, and was on his way back to his vehicle when the altercation broke out.

- The parking lot where the altercation occurred is under video surveillance by Uncle Mick's.

- The altercation giving rise to Frye's claim occurred while the bar was open for business.

Mt. Hawley argues that these facts are enough to conclude that Frye's bodily injury arose, at the very least, indirectly, from Uncle Mick's operation of its business and use of the premises.  Mt. Hawley argues that "the addition of the adverb 'indirectly' after the phrase 'arising out of' broadens the scope of the endorsement's application such that the endorsement applies whenever a bodily injury claim arises in any manner from the tenant's occupation or use of the leased premises, or from such tenant's operations of any kind."[79]

The Florida Supreme Court has instructed:

> The term "arising out of" is broader in meaning than the term "caused by" and means "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or 'having a connection with.... [T]his requires more than a mere coincidence between the conduct ... and the injury. It requires some causal connection, or relationship.... But it does not require proximate cause.[80]

---

[79] DE 81 at 5.

[80] *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 539–40 (Fla. 2005) (alterations added; internal quotation marks and citations omitted); see also, *James River Ins. Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1275 (11th Cir.

The phrase "arising out of" is not ambiguous and should be interpreted broadly.[81]  All that is required is some connection or link between Uncle Mick's and the injury.[82]  Therefore, to be clear, the Policy's Tenants and Contractors Endorsement excluding coverage is applicable to Frye's bodily injury claims if Frye's injuries directly or indirectly originated from, flowed from or is connected to Uncle Mick's occupation, use or maintenance of the leased property.

This question brings the Court back full circle.  Consideration of extrinsic facts to determine the applicability of the Tenants and Contractors Endorsement is only appropriate in "exceptional cases" where the Court may craft an equitable remedy when it is manifestly obvious to all involved that the actual facts place the claims outside the scope of coverage.[83]  While it is undisputed that Uncle Mick's primary commercial general liability insurer did not agree to defend and indemnify Uncle Mick's in the Frye action under a policy with limits equal to or greater than the limits

_____

2008).

[81]  *Id.* (internal citations omitted); *Mt. Hawley Ins. Co. v. Dania Distribution Centre, Ltd.*, 763 F. Supp. 2d 1359, 1365 (S.D. Fla. 2011) (injuries alleged in complaint were caused by the dispersal of pollutants and fall squarely within the pollution exclusion clause).

[82]  *Taurus*, 913 So.2d at 533 (citing *Government Employees Ins. Co. v. Novak*, 453 So.2d 1116, 1119 (Fla. 1984)).

[83]  *Stephens*, 749 F.3d at 1323-34 quoting *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F.App'x 777, 786 (11th Cir. 2008); *accord, Gozzo*, 2017 WL 3578846, at *3 (refusing to consider evidence beyond the underlying complaint in determining the duty to defend where the proffered evidence was "not the type of obvious and objective fact that clearly precludes coverage").

of the Mt. Hawley policy, it is *not undisputed* or obvious that Frye's injuries directly or indirectly originated from, flowed from or is connected to Uncle Mick's occupation, use or maintenance of the leased property  - an important qualifier for application of the Tenants and Contractors Endorsement.  Therefore, this is not the type of case where it is "manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage," and therefore this Court may not consider extrinsic facts outside the Underlying Complaint in determining Mt. Hawley's duty to defend.[84]  Accordingly, Mt. Hawley is not entitled to a declaratory judgment that there is no coverage under the Policy for the claims asserted by Frye in the underlying liability action.  Therefore, it is hereby

      **ORDERED AND ADJUDGED** that Defendants' Motion for Partial Summary Judgment on the Complaint for Declaratory Relief [DE 70] is granted.  Mt. Hawley has a continuing duty to defend the claims against the Policy Holders set forth in the underlying Frye Complaint.  Plaintiff Mt. Hawley Insurance Company's Dispositive Motion for Summary Judgment [DE 71] is denied.  This matter is stayed as to Mt. Hawley's obligation to indemnify its Policy Holders in the Underlying Litigation.  The Clerk is directed to **close this case for administrative purposes**.  Any party may

---

[84] *See, Stephens*, 749 F.3d at 1323, *Gozzo,* 2017 WL 3578846, at *3.

move to reopen this case when the issue of a duty to indemnify becomes ripe.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 11th day of April, 2019.

_____

KENNETH A. MARRA
United States District Judge